**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Luis Guilin, On Behalf of Himself and All Others Similarly Situated, | Case No.:    11 cv 07763 |
| Plaintiff, | **CLASS ACTION** |
| v. | Judge James B. Zagel |
| Walgreen Co., an Illinois corporation, | Magistrate Judge Sidney I. Schenkier |
| Defendant. | |

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff Luis Guilin, by and through his attorneys, brings this action on behalf of himself and all others similarly situated against Defendant Walgreen Co. and alleges as follows:

**NATURE OF ACTION**

1.        Walgreen markets, sells and distributes Glucosamine Chondroitin Complex, a line of six joint health dietary supplements.[1]  All of the six products bear the name Glucosamine Chondroitin in bold, large letters, prominently at the top front of each label. The primary purported active ingredients in all of Walgreen's Glucosamine Chondroitin Complex products are glucosamine hydrochloride and chondroitin sulfate.   Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Walgreen promises that Glucosamine Chondroitin Complex will help build cartilage, lubricate joints and improve joint comfort.   On the front of each box of Walgreen's six Glucosamine Chondroitin Complex products, where consumers cannot miss it, Defendant claims that the Products will help to

---

[1] The Glucosamine Chondroitin Complex line includes: (1) Glucosamine Chondroitin Complex Triple Strength; (2) Glucosamine Chondroitin MSM Complex; (3) Glucosamine Chondroitin Double Strength; (4) Glucosamine Chondroitin Complex Triple Strength with Vitamin D; (5) Glucosamine Chondroitin Complex Advanced plus MSM; and (6) Glucosamine Chondroitin Complex Advanced (collectively, "Glucosamine Chondroitin Complex" or "the Products").

"rebuild cartilage" and "lubricate joints." Defendant also states that Glucosamine Chondroitin Complex is "formulated to help with joint comfort."[2]

2.      Prominently displayed on the Products' labels are the deceptive taglines: "rebuild cartilage", "lubricate joints" and "joint comfort." (collectively referred to as "the joint health benefit representations"). No limitations accompany these taglines such that the take-away is that Glucosamine Chondroitin Complex will provide these specific joint related benefits for all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments. In this vein, every Glucosamine Chondroitin Complex product label depicts persons running and has circles or highlighting around a variety of joints including the runners' elbows, hips, knees and ankles.

3.      In truth, Glucosamine Chondroitin Complex does not rebuild cartilage, lubricate joints or improve joint comfort. Clinical cause and effect studies have found that the primary active ingredients in the Products, glucosamine and chondroitin, are ineffective, taken alone or in combination, with regard to the purported joint health benefits represented on the Products' packaging and labeling. As a recent study sponsored by the National Institute of Health ("NIH") concluded: "The analysis of the primary outcome measure did not show that either [glucosamine or chondroitin], alone or in combination, was efficacious. . . ." Clegg, D., et al., Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis, 354 New England J. of Med. 795, 806 (2006) ("2006 GAIT Study"). As a result, in addition to affirmatively misrepresenting the joint health benefits of its Glucosamine Chondroitin Complex products, the failure of Walgreen to disclose the facts regarding these studies also constitutes deception by omission or concealment. Thus, Walgreen's joint health benefit representations and omissions are false, misleading and reasonably likely to deceive the public.

4.      Despite the deceptive nature of Walgreen's representations, Walgreen conveys

---

[2] Walgreen makes the "joint comfort" representation on four of the Products: (1) Glucosamine Chondroitin Complex Triple Strength; (2) Glucosamine Chondroitin MSM Complex (the product purchased by Plaintiff); (3) Glucosamine Chondroitin Double Strength; and (4) Glucosamine Chondroitin Complex Triple Strength with Vitamin D.

its uniform, deceptive message to consumers through a variety of media including its website and online promotional materials, and, most important, at the point of purchase, on the front of the Productsø packaging/labeling where it cannot be missed by consumers. The only reason a consumer would purchase Glucosamine Chondroitin Complex is to obtain the advertised joint health benefits, which the Glucosamine Chondroitin Complex products do not provide.

5.       As a result of Walgreenøs deceptive claims, consumers ó including Plaintiff and the proposed Class ó have purchased products that do not perform as advertised.

6.       Plaintiff brings this action on behalf of himself and all other similarly situated consumers to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Glucosamine Chondroitin Complex products.  Plaintiff alleges violations of Californiaøs Unfair Competition Law and the Consumers Legal Remedies Act created by Walgreenøs advertising, including false labeling.

## JURISDICTION AND VENUE

7.       The Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the members of the class are citizens of states different from Defendant.

8.       Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this District and because Walgreen is an Illinois Corporation, headquartered in this District and does substantial business within this District.

## PARTIES

9.       Plaintiff Luis Guilin resides in Calexico, California.  On or around spring 2011, Plaintiff Guilin was exposed to and saw Walgreenøs representations by reading the label of the Glucosamine Chondroitin Complex with MSM product at a Walgreen store in El Centro, California.   In reliance on the joint health benefit representations on the front of the label,

Plaintiff purchased the Glucosamine Chondroitin Complex with MSM and paid approximately $20 for the bottle. After using the Product as directed, Plaintiff did not experience any of the represented joint health benefits. Believing that if he continued using the Product it would work, Plaintiff purchased another bottle of Glucosamine Chondroitin Complex with MSM in El Centro. However, after using approximately half of this bottle and having experienced no joint health benefits, Plaintiff stopped using the Product. Plaintiff suffered injury fact and lost money. Had Plaintiff known the truth about Defendant's misrepresentations and omissions at time of his first purchase and at the time of his second purchase, including that the scientific evidence demonstrated that these Products were not effective as represented by Defendant, Plaintiff would not have purchased the Product.

10.     Defendant Walgreen Co. is a corporation organized and existing under the laws of Illinois. Walgreen's headquarters is at 200 Wilmot Road Deerfield, Illinois 60015. From its headquarters in Illinois, Walgreen distributed, promoted, marketed and sold the Glucosamine Chondroitin Complex products to consumers throughout the United States.

## FACTUAL ALLEGATIONS

### The Glucosamine Chondroitin Complex Products

11.     Since 2007, Defendant has distributed, marketed, and sold nationwide the Glucosamine Chondroitin Complex products.

12.     The Glucosamine Chondroitin Complex products are sold in every Walgreen store and on Defendant's website - Walgreens.com. The Glucosamine Chondroitin Complex products are available in 80, 90, 120 and 150 count bottles, retailing for approximately $19.99 to $29.99. The following are screen shots of the Products:

  
  

13.     Since the Products' launch, Walgreen has consistently conveyed the message to consumers throughout the United States that Glucosamine Chondroitin Complex helps to "rebuild cartilage", "lubricate joints" and on four of the Products (including the one that Plaintiff purchased) that the Products help with "joint comfort", simply by taking the recommended number of tablets each day.  They do not.  Defendant's joint health benefit representations and omissions are false, misleading, and deceptive.

14.     The first identified primary active ingredient in all the Glucosamine Chondroitin Complex products is glucosamine hydrochloride.  As more fully set forth below, the scientific evidence is that glucosamine, taken alone or in combination with chondroitin sulfate, does not provide the joint health benefits represented by Defendant.

15.     The second primary active ingredient in Defendant's Glucosamine Chondroitin Complex products is chondroitin sulfate. As more fully set forth below, the scientific evidence is that chondroitin sulfate, alone or in combination with glucosamine, does not provide the joint health benefits represented by Defendant.

16.     In addition to these two primary active ingredients that Defendant prominently promotes as being the primary active ingredients that provide the purported joint health benefits,

Defendant's Glucosamine Chondroitin Complex products contain smaller amounts of other purported ingredients, including: methylsulfonylmethane ("MSM");[3] hyaluronic acid;[4] and *Boswellia Serrata*,[5] also known as Indian Frankincense. As more fully discussed below, these minor ingredients are also not effective in providing the joint health benefits represented by Defendant, but in any event the focus of this action is on the uniform false and deceptive representations and omissions that Defendant makes about glucosamine and chondroitin on the package labeling of each of its Glucosamine Chondroitin Complex products.

17. Even though numerous clinical studies have found that the two primary ingredients in Defendant's Glucosamine Chondroitin Complex products, glucosamine and chondroitin, alone or in combination, to be ineffective, Walgreen continues to state on the Products' packaging and labeling that Glucosamine Chondroitin Complex helps to, *inter alia*: "rebuild cartilage", "lubricate joints" and improve "joint comfort", without any limitation on which joints (in fact highlighting four key joint areas), for adults of *all* ages and without any limitation on what stages of joint related ailments. Front, back, and side shots of a representative Glucosamine Chondroitin Complex Triple Strength label appear as follows:

---

[3] Glucosamine Chondroitin Complex Advanced is the only Product that does not contain MSM.

[4] Glucosamine Chondroitin Complex with MSM, Glucosamine Chondroitin Advanced with MSM, and Glucosamine Chondroitin Advanced are the only Products that contain hyaluronic acid.

[5] Glucosamine Chondroitin Complex Advanced and Glucosamine Chondroitin Complex Advanced Plus MSM are the only Products that do not contain *Boswellia Serrata*.

## FRONT



**Walgreens**

Compare to Osteo Bi-Flex® Ingredients™

# Glucosamine Chondroitin

**COMPLEX**

*Triple Strength*

Formulated to Help:

• With Joint Comfort

• Rebuild Cartilage & Lubricate Joints**

Coated caplets

**This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

80 caplets

•2 PER DAY

Dietary Supplement

## LEFT SIDE



Overexertion, the natural aging process and everyday wear and tear can take their toll. *Glucosamine Chondroitin Complex* has a proprietary blend of ingredients that support healthy joints.**

The *"Advanced"* Choice in Joint Health**

*Glucosamine Chondroitin Complex* is an advanced formula that contains Boswellia serrata extract.

Boswellia serrata extract's mechanism of action supports cartilage by guarding against the action of enzymes that affect joint health.** Additionally, *Glucosamine Chondroitin Complex* helps protect cartilage and helps maintain the cellular components within joints.**

Helps Protect Cartilage**

**These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

## RIGHT SIDE

**DIRECTIONS FOR ADULT USE: TAKE TWO (2) CAPLETS PER DAY, WITH FOOD.** As a reminder, discuss the supplements and medications you take with your healthcare providers.

### Supplement Facts

Serving Size 2 Caplets
Servings Per Container 40

| Amount Per Serving | % Daily Value |
|---|---|
| Calories 15 | |
| Total Carbohydrate 3 g | < 1%* |
| Vitamin C (as ascorbic acid) 60 mg | 100% |
| Manganese (as manganese sulfate) 2 mg | 100% |
| Sodium 40 mg | 2% |
| Glucosamine HCl 1.5 g (1,500 mg) | † |
| Proprietary Blend 1.25 g (1,250 mg) Chondroitin Sulfate Sodium, Methylsulfonylmethane (MSM), Hydrolyzed Gelatin, Boswellia serrata (wood) resin, Hyaluronic Acid | † |
| Boswellia serrata AKBA standardized extract (wood) resin 100 mg | † |
| Boron (as sodium borate) 3 mg | † |

*Percent Daily Values are based on a 2,000 calorie diet.
†Daily Value not established.

**Other Ingredients:** Crospovidone, Povidone, Microcrystalline Cellulose, Polyvinyl Alcohol, Titanium Dioxide, Polyethylene Glycol, Stearic Acid, Talc, Magnesium Stearate, Silicon Dioxide, Caramel Color.
**CONTAINS: SHRIMP, CRAB, CRAYFISH** Gluten Free
**WARNING:** If you are pregnant or nursing a baby, or if you are taking any medication (including OTC medication), or have A MEDICAL CONDITION or are planning any medical procedure, consult your doctor before use. **Avoid this product if you have allergies to shellfish or sulfur.** Discontinue use and consult your doctor if any adverse reactions occur. NOT INTENDED FOR USE BY PERSONS UNDER THE AGE OF 18.
KEEP OUT OF THE REACH OF CHILDREN.
DO NOT USE IF PRINTED SEAL UNDER CAP IS BROKEN OR MISSING

## BACK



This product is formulated with a proprietary blend containing Boswellia serrata extract. As a key ingredient of the formulation, Boswellia serrata extract may help with knee comfort.**

*Glucosamine Chondroitin Complex* is a synergistic combination of the latest in joint health ingredients, specifically designed for those individuals who are serious about protecting and maintaining their joint health.**

Store at room temperature (59°-86°F).

♦Triple Strength refers to the number of caplets required per serving size.

Questions or comments? 1-800-719-9260

***This product is not manufactured or distributed by Rexall Sundown, Inc., manufacturer of Osteo Bi-Flex®.

Distributed by:
Walgreen Co., 200 Wilmot Rd
Deerfield, IL 60015-4616

Quality Guaranteed

100% Satisfaction Guaranteed with all Walgreens Products or Your Money Back.
www.walgreens.com

REV 0210

**These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

The container inside is filled by count, not weight

***Scientific Studies Confirm That Glucosamine Chondroitin Complex Is Not Effective.***

18.      Independent studies published, at least as early as 2004, have found that glucosamine and chondroitin, both alone or in combination, are not effective in providing the represented joint health benefits.

19.      For example, a 2004 study by McAlindon et al., entitled Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From and Internet-Based Randomized Double-Blind Controlled Trial, 117(9) Am. J. Med. 649-9 (Nov. 2004), concluded that glucosamine was no more effective than placebo in treating the symptoms of knee osteoarthritis ó in short, it was ineffective.

20.      Also as early as 2004, studies confirmed there is a significant õplaceboö effect with respect to glucosamine consumption.  A 2004 study by Cibere et al, entitled Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004), studied users of glucosamine who had claimed to have experienced at least moderate improvement after starting glucosamine.  These patients were divided into two groups ó one that continued using glucosamine and one that was given a placebo.  For six months, the primary outcome observed was the proportion of disease flares in the glucosamine and placebo groups.  A secondary outcome was the time to disease flare.  The study results reflected that there were no differences in either the primary or secondary outcomes for glucosamine and placebo.  The authors concluded that the study provided no evidence of symptomatic benefit from continued use of glucosamine ó in other words, any prior perceived benefits were due to the placebo effect and not glucosamine.

21.    In the 2006 Gait Study, the study authors rigorously evaluated the effectiveness of glucosamine hydrochloride and chondroitin, alone and in combination, on osteoarthritis for six months.  According to the studyøs authors, õThe analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious. . .ö 2006 GAIT

Study at 806.[6]  Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[7] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 reported results were inconclusive.  *See Sawitzke, A.D., et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report, 58(10) J. Arthritis Rheum. 3183–91 (Oct. 2008); Sawitzke, A.D., Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).*

22.   The GAIT studies are consistent with the reported results of prior and subsequent studies.   For example, the National Collaborating Centre for Chronic Conditions ("NCCCC") reported "the evidence to support the efficacy of glucosamine hydrochloride as a symptom modifier is poor" and the "evidence for efficacy of chondroitin was less convincing." NCCCC, Osteoarthritis National Clinical Guideline for Care and Management of Adults, Royal College of Physicians, London 2008.   Consistent with its lack of efficacy findings, the NCCCC Guideline did not recommend the use of glucosamine or chondroitin for treating osteoarthritis. *Id.* at 33.

23.   A study by Rozendaal et al., entitled Effect of Glucosamine Sulfate on Hip Osteoarthritis, 148 Ann. of Intern. Med. 268-77 (2008) assessing the effectiveness of glucosamine on the symptoms and structural progression of hip osteoarthritis during 2 years of treatment, concluded that glucosamine was no better than placebo in reducing symptoms and progression of hip osteoarthritis.

24.   A 2010 meta-analysis by Wandel et al. entitled Effects of Glucosamine,

---

[6] The 2006 Gait Study was funded by the National Center for Complementary & Alternative Medicine and the National Institute of Arthritis and Musculoskeletal and Skin Diseases, two components of NIH.

[7] To a similar effect a study by Kwok, et al., entitled The Joints On Glucosamine (JOG) Study:  A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritic Based On 3T MRI, 60 Arthritis Rheum 725 (2009) concluded that glucosamine was not effective in preventing the worsening of cartilage damage.

Chondroitin, Or Placebo In Patients With Osteoarthritis Or Hip Or Knee: Network Meta-Analysis, BMJ 341:c4675 (2010) examined prior studies involving glucosamine and chondroitin, alone or in combination, and whether they relieved the symptoms or progression of arthritis of the knee or hip. The study authors reported that glucosamine and chondroitin, alone or in combination, did not reduce joint pain or have an impact on the narrowing of joint space: "Our findings indicate that glucosamine, chondroitin, and their combination do not result in a relevant reduction of joint pain nor affect joint space narrowing compared with placebo." *Id.* at 8. The authors went as far to say, "We believe it unlikely that future trials will show a clinically relevant benefit of any of the evaluated preparations." *Id.*

25. In the July 7, 2010, Wilkens et al., reported that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that neither glucosamine nor placebo were effective in reducing pain related disability. The researchers also stated that, "Based on our results, it seems unwise to recommend glucosamine to all patients" with low back pain and lumbar osteoarthritis. Wilkens et al., Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis, 304(1) JAMA 45-52 (July 7, 2010).

26. Scientific studies also confirm that the other ingredients in Glucosamine Chondroitin Complex are ineffective. *See, e.g.*, S. Brien, *et. al.*, Systematic Review of the Nutritional Supplements (DMSO) and methylsulfonylmethane (MSM) in the treatment of osteoarthritis (Apr. 17, 2008) (concluding that there is no "definitive evidence that MSM is superior to placebo in the treatment of mild to moderate OA of the knee")**.**

27. While hyaluronic acid has been proven to be effective when directly injected into joints, due to its high molecular weight, when taken orally, it cannot be absorbed into the human bloodstream let alone beneficially affect joints.

28. *Boswellia Serrata* – Indian Frankincense - is essentially a witch doctor potion and is not effective in providing any joint health benefits.

***The Impact of Walgreen's Wrongful Conduct***

29.     Despite clinical studies that show the ingredients in Walgreen's Glucosamine Chondroitin Complex products are ineffective, Walgreen conveyed and continues to convey one uniform message:  Glucosamine Chondroitin Complex helps to "rebuild cartilage", "lubricate joints" and improve "joint comfort" in all joints in the human body, for adults of all ages and for all manner and stages of joint related ailments.

30.     As the distributor of Glucosamine Chondroitin Complex, Walgreen possesses specialized knowledge regarding the content and effects of the ingredients contained in its Products and Walgreen is in a superior position to learn of the effects – and has learned of the effects, or lack thereof, – its Products have on consumers.

31.     Specifically, at least as early as 2007 when it began selling the Glucosamine Chondroitin Complex products, Walgreen knew, but failed to disclose, that the Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in its Glucosamine Chondroitin Complex products to be ineffective in providing the joint health benefits represented by Walgreen. Plaintiff and Class members have been and will continue to be deceived or misled by Walgreen's deceptive joint health benefit representations.  Plaintiff purchased and consumed Glucosamine Chondroitin Complex during the Class period and in doing so, read and considered the Product's label and based his decision to purchase the Product on the joint health benefit representations on the product packaging. Walgreen's joint health benefit representations and omissions were a material factor in influencing Plaintiff's decision to purchase and consume the Product.

32.     The only purpose behind purchasing the Glucosamine Chondroitin Complex products is to obtain some or all of the represented joint health benefits.  There is no other reason for Plaintiff and the Class to have purchased the Products and Plaintiff and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

33.     As a result, Plaintiff and the Class members have been injured in fact in their

purchases of these Products in that they were deceived into purchasing Products that do not perform as advertised.

34.     Walgreen, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

35.     Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Walgreen for violations of California state laws and similar laws in other states:

> **Multi-State Class**
> All persons who, within the applicable statute of limitations under their respective state's consumer fraud act,[8] purchased the Glucosamine Chondroitin Complex products.
>
> Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Glucosamine Chondroitin Complex products for the purpose of resale

36.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated California residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

> **California Class**
> All California residents who, within the applicable statute of

---

[8]While discovery may alter the following, Plaintiff preliminarily avers that the other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Arkansas (Ark. Code § 4-88-101, *et seq.*); Colorado (Colo. Rev. Stat. § 6-1-101, et seq.); Connecticut (Conn. Gen. Stat. § 42-110, *et seq.*); Delaware (Del. Code tit. 6, § 2511, *et seq.*); District of Columbia (D.C. Code § 28-3901, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Hawaii (Haw. Rev. Stat. § 480-1, *et seq.*); Idaho (Idaho Code § 48-601, *et seq.*); Illinois (815 ICLS § 505/1, *et seq.*); Maine (Me. Rev. Stat. tit. 5 § 205-A, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010, *et seq.*); Montana (Mo. Code. § 30-14-101, *et seq.*); Nebraska (Neb. Rev. Stat. § 59-1601, *et seq.*); Nevada (Nev. Rev. Stat. § 598.0915, *et seq.*,); New Hampshire (N.H. Rev. Stat. § 358-A:1, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New Mexico (N.M. Stat. § 57-12-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349,*et seq.*); North Dakota (N.D. Cent. Code § 51-15-01, *et seq.*); Oklahoma (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon (Or. Rev. Stat. § 646.605, *et seq.*); Rhode Island (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Dakota (S.D. Code Laws § 37-24-1, *et seq.*); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Virginia (VA Code § 59.1-196, *et seq.*); Vermont (Vt. Stat. tit. 9, § 2451, *et seq.*); Washington (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia (W. Va. Code § 46A-6-101, *et seq.*); and Wisconsin (Wis. Stat. § 100.18, *et seq.*).

limitations, purchased the Glucosamine Condition Complex products.

Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Glucosamine Condition Complex products for the purpose of resale.

37.     Members of the Class are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.

38.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  The common legal and factual questions include, but are not limited to, the following:

•      Whether the representations discussed herein that Defendant made about its Glucosamine Condition Complex products were or are misleading, or likely to deceive;

•      Whether Plaintiff and the Class members were deceived by Defendant's representations;

•      Whether the alleged conduct constitutes violations of the laws asserted herein;

•      Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

•      Whether Plaintiff and the Class are entitled to injunctive, declaratory or other equitable relief.

39.     Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above, including being subject to Defendant's deceptive joint health benefit representations, which accompanied each and every box of Glucosamine Condition Complex.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

41.     In the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

42.      Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.  Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## COUNT I
### Violation of Business & Professions Code §17200, *et seq.*
### (Applicable to a Multi-State or California-Only Class)

43.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

44.     Plaintiff brings this claim individually and on behalf of the Class.

45.     As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Walgreen's conduct because he purchased a Glucosamine Chondroitin Complex product in reliance on Walgreen's joint health benefit statements detailed above, but did not receive a product that provided the represented joint health benefits.

46.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, Walgreen committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*

47.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.   Such conduct is ongoing and continues to this date.

48.     Walgreen's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Walgreen engaged in false advertising, misrepresented and omitted material facts regarding its Glucosamine Chondroitin Complex products in its advertising campaign, including the Products' packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

49.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.   Walgreen's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

50.     There were reasonably available alternatives to further Walgreen's legitimate

business interests, other than the conduct described herein.

51.     Business & Professions Code §17200, *et seq*., also prohibits any "fraudulent business act or practice."

52.     Walgreen's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*.

53.     Plaintiff and other members of the Class have in fact been deceived by Walgreen's material representations and omissions, which are described above.  This deception has caused harm to Plaintiff and other members of the Class who each purchased a Glucosamine Chondroitin Complex product.  Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

54.     As a result of its deception, Walgreen has been able to reap unjust revenue and profit.

55.     Unless restrained and enjoined, Walgreen will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

56.     Plaintiff, on behalf of himself and all others similarly situated, and the general public, seeks restitution of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Walgreen from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## <u>COUNT II</u>
### Violations of the Consumers Legal Remedies Act – Civil Code §1750 *et seq*.
### (Applicable to a Multi-State or California-Only Class)

57.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

58.     Plaintiff brings this claim individually and on behalf of the Class.

59.     This cause of action is brought pursuant to the Consumers Legal Remedies Act,

California Civil Code §1750, et seq. (the "Act"). Plaintiff is a "consumer" as defined by California Civil Code §1761(d). Walgreen's Glucosamine Chondroitin Complex products are "goods" within the meaning of the Act.

60.     Walgreen violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Glucosamine Chondroitin Complex:

(5)     Representing that [Glucosamine Chondroitin Complex has] . . . approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

*     *     *

(7)     Representing that [Glucosamine Chondroitin Complex is] of a particular standard, quality or grade . . . if [it is] of another.

*     *     *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*     *     *

(16)     Representing that [Glucosamine Chondroitin Complex has] been supplied in accordance with a previous representation when [it has] not.

61.     Walgreen violated the Act by representing and failing to disclose material facts in its advertising campaign including the Glucosamine Chondroitin Complex product labels and packaging, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

62.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Walgreen and for restitution.

63.     Pursuant to §1782 of the Act, , by letter dated April 19, 2012, Plaintiff notified Walgreen in writing by certified mail of the particular violations of §1770 of the Act and demanded that Walgreen rectify the problems associated with the actions detailed above and give notice to all affected consumers of Walgreen's intent to so act.

64.     Walgreen failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiff further seeks actual, punitive and statutory damages.

65.     Walgreen's conduct is fraudulent, wanton and malicious.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as either as a multi-state class or as a California-only class;

B.     Awarding restitution to Plaintiff and the proposed Class members;

C.     Awarding injunctive relief as permitted by law or equity, including enjoining Walgreen from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

D.     Awarding statutory and punitive damages, as appropriate;

E.     Ordering Walgreen to engage in a corrective advertising campaign;

F.     Awarding attorneys' fees and costs; and

G.     Providing such further relief as may be just and proper.


DATED: June 7, 2012

                        s/ Stewart Weltman_____
                        Of Counsel
                        LEVIN FISHBEIN SEDRAN & BERMAN
                        STEWART M. WELTMAN
                        122 S. Michigan Avenue, Suite 1850
                        Chicago, Illinois 60603
                        Telephone:  312-427-3600
                        Fax:      312-427-1850

                        SIPRUT PC
                        JOSEPH SIPRUT
                        122 South Michigan Avenue

Suite 1850
Chicago, Illinois 60603
312.588.1440

Attorneys for Plaintiff

Of Counsel:

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON (*To be admitted Pro Hac Vice*)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone:     (602) 274-1100
Facsimile:     (602) 798-5860

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (*To be admitted Pro Hac Vice*)
600 West Broadway Suite 900
San Diego, California 92101
Telephone:     (619) 756-6978
Facsimile:     (602) 798-5860

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of June, 2012, a copy of the foregoing Third Amended Class Action Complaint was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

> David B. Sudzus
> Bradley J. Andreozzi
> Benjamin Todd Vinson
> Justin O'Neill Kay
> Drinker Biddle & Reath LLP
> 191 N. Wacker Drive, Suite 3700
> Chicago, IL 60606

s/Stewart M. Weltman
One of Plaintiff's Attorneys