**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Luis Guilin, On Behalf of Himself and All Others Similarly Situated, | Case No.:    11 cv 07763 |
| Plaintiff, | **<u>CLASS ACTION</u>** |
| | Judge James B. Zagel |
| v. | Magistrate Judge Sidney I. Schenkier |
| Walgreen Co., an Illinois corporation, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THIRD AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES í í í í í í í í í í í í í í í í í í í    iii

I.    INTRODUCTION í í í í í í í í í í í í í í í í í í í í .    1

II.    SUMMARY OF TAC í í í í í í í í í í í í í í í í í í ..    2

III.    ARGUMENT í í í í í í í í í í í í í í í í í í í í í    3

    A.    UNDER CALIFORNIA LAW ó INJURY OCCURS
          AT THE TIME OF PURCHASE..í í í í í í í í .    4

    B.    PLAINTIFFøS CLAIMS ARE NOT õLACK OF
          SUBSTANTIATION CLAIMSö - PLAINTIFF HAS
          ALLEGED THAT DEFENDANTøS PRODUCTS ARE
          INEFFECTIVE AND DO NOT WORK AS
          REPRESENTED í í í í í í í í í í í í í í í    5

    C.    THE STUDIES CITED IN THE TAC LEND
          PLAUSIBILITY TO AND SUPPORT PLAINTIFFøS
          INEFFICACY ALLEGATIONS AS TO ALL
          PURCHASERS OF DEFENDANTøS
          PRODUCTS í í í í í í í í í í í í í í ..í í    8

    D.    DEFENDANTøS PURPORTED DISCLAIMERS AND
          MONEY BACK GUARANTEES ARE OF NO
          CONSEQUENCE í í í í í í í í í í í í í í    11

    E.    THE TAC STATES A CLAIM UNDER BOTH RULE 8
          AND RULE 9 (b) í í í í í í í í í í í í í í ..    13

        1.    Plaintiff Has Satisfied Rule 8(a) í í í í í í í í    13

        2.    The TAC Satisfies Rule 9(b) Pleading
              Requirements by Alleging The Who What When
              and Where and How of Defendantøs Consumer
              Frauds í í í í í í í í í í í í í í ..    14

    F.    PLAINTIFFøS CONSUMER FRAUD CLAIMS ARE
          PLAUSIBLE í í í í í í í í í í í í í í í í .    15

    G.    PLAINTIFF HAS ADEQUATELY PLED AN OMISSION

CLAIM……………………………………    16

H.     DEFENDANT's STANDING ARGUMENT IS WITHOUT
       MERIT…………………………………… .    17

IV.    CONCLUSION…………………………………… .    22

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Askin v. Quaker Oats, Co.*,
    No. 11 CV 111, 2011 WL 5008524 (N.D. Ill. October 12, 2011) ...........................................18

*Atkins v. City of Chicago*,
    631 F.3d 823 (7th Cir. 2011)...............................................................................................11

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001)..............................................................................................14

*Brazil v. Dell, Inc.*,
    No. C-07-01700, 2008 WL 4912050 (N.D. Cal. 2008).........................................................19

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ........................................................................................18

*Bzdawka v. Milwaukee County*,
    238 F.R.D. 469 (E.D. Wisc. 2006) ......................................................................................20

*Cardenas v. NYBT*,
    2012 WL 1593196................................................................................................................5

*Carideo v. Dell, Inc.*,
    706 F. Supp. 2d 1122 (W.D. Wash. 2010)...........................................................................19

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
    No. C 10-01044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ..............................................21

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010) ........................................................................................19

*Chavez v. Nestle USA, Inc.*,
    No. CV 09-9192, 2011 WL 2150128 (C.D. Cal. May 19, 2011)..............................................8

*Cholakyan v. Mercedes-Benz U.S.A., LLC*,
    766 F.Supp.2d 1220, 1228-29 (C.D.Cal. 2011) ...................................................................18

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 ...................................................................................................................20

*Fallick v. Nationwide Mutual Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998)...............................................................................................20

*Daugherty v. American Honda Motor Co., Inc.,*
  144 Cal.App.4th 824 (Ca.App. 2006)..................................................................16

*De La Fuente v. Stokely –Van Camp, Inc.,*
  713 F. 2d 225 (7th Cir. 1977)...........................................................................20

*Donahue v. Apple, Inc.,*
  11-cv-05337, 2012 WL 1657119 (N.D.Cal. May 10, 2012)í  í  í  í  í  í  í  í  í  í  í  í  ..19

*Elias v. Ungar's Food Prods., Inc.,*
  252 F.R.D. 233 (D.N.J. 2008)...........................................................................19

*Ellis v. Costco Wholesale Corp.,*
  657 F.3d 970 (9th Cir. 2011)............................................................................20

*Erickson v. Pardus,*
  127 S.Ct. 2197 (2007)......................................................................................13

*F.T.C. v. Lights of America, Inc.,*
  760 F.Supp.2d 848 (C.D.CA. 2010)...................................................................13

*F.T.C. v. Pantron I Corp.,*
  33 F.3d 1088 (9th Cir. 1994)............................................................................13

*F.T.C. v. QT Inc.,*
  448 F.Supp.2d 908(N.D.Ill. 2006).......................................................................5

*F.T.C. v. Think Achievement Corp.,*
  312 F.3d 259 (7th Cir. 2002)............................................................................12

*Forcellati v. Hyland's, Inc.,*
  CV 12-1983, 2012 WL 2513481  (C.D.Cal. June 1, 2012) ...................................19

*Fraker v. Bayer Corp.,*
  No. CV F08-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ...............................8

*F.T.C v. Direct Marketing Concepts, Inc.,*
  624 F.3d 12 n.9 (1st Cir. 2010) ........................................................................12

*Greenwood v. Compucredit Corp.,*
  No. 08-04787, 2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ..............................20

*In re Aqua Dot Prods. Liability Litig.,*
  654 F.3d 748 (7th Cir. 2011)............................................................................18

*In re Hydroxycut Marketing and Sales Practices Litig.,*
 801 F.Supp.2d 993 (S.D. Cal. 2011) ...............................................................4

*In re Hydroxycut Marketing and Sales Practices Litig.,*
 09-md-2087, 2011 WL 2135232 (S.D.Cal. May 31, 2011) ....................................18

*In re Rhythms Secs. Litig.,*
 300 F. Supp. 2d 1081 (D. Colo. 2004) ............................................................20

*In re Steroid Hormone Product Cases,*
 181 Cal.App.4th 145 (2010) ..........................................................................4

*In re Tobacco II Cases,*
 46 Cal. 4th 298  (2009) ..........................................................................4, 22

*In re VeriSign, Inc.,*
 No. C 02-02270, 2005 WL 88969 (N.D. Cal. Jan. 2005) ....................................20

*Johns v. Bayer Corp.,*
 No. 09-cv-1935, 2010 WL 2573493 (S.D. Cal. 2010) ........................................12

*Johns v. Bayer Corp.,*
 No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)................................21

*Kearns v. Ford Motor Co.,*
 567 F.3d 1120  (9th Cir. 2009)......................................................................14

*Kwikset v. Super. Ct.,*
 51 Cal. 4th 310 (2011)í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  í  ...4, 18

*LLC v. Trinity Industries, Inc.,*
 300 F.3d 730 (7th Cir. 2002)..........................................................................6

*Lozano v. AT&T Wireless Services, Inc.,*
 504 F.3d 718 (9th Cir. 2007)........................................................................20

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992)......................................17

*Massachusetts Mutual Life Ins. Co. v. Superior Court,*
 97 Cal.App.4th 1282 (2002) ..........................................................................4

*Medrazo v. Honda of North Hollywood,*
 166 Cal. App. 4th 89 (2008) ........................................................................19

*Mlejnecky v. Olympus Imaging Am. Inc.,*
 No 2:10-CV-02630, 2011 WL 1497096 (E.D. Cal. Apr. 19, 2011)..........................21

*Montgomery Ward & Co. v. F.T.C.,*
  379 F.2d 666 (7th Cir. 1967)...............................................................................13

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm.,*
  107 Cal. App. 4th 1336 (2003)..........................................................................6, 8

*Nelson v. Mead Johnson Nutrition Co.,*
  270 F.R.D. 689 (S.D. Fla. 2010) ........................................................................20

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) .................................................................................15

*Ong v. Sears Roebuck & Co.,*
  388 F. Supp. 2d 871 (N.D. Ill. 2004)..................................................................22

*Payton v. County of Kane,*
  308 F.3d 673 (7th Cir. 2002)..............................................................................20

*Raltson v. Mortgage Investors Group, Inc.,*
  No. 5:08-cv-00536, 2011 WL 4081696 (N.D. Cal. Sept.12, 2011) ..........................20

*Rosario v. Livaditis,*
  963 F.2d 1013 (7th Cir. 1992)............................................................................20

*Salazar-Martinez v. Fowler Bros., Inc.,*
  781 F. Supp. 2d 183 (W.D. NY. 2011) ................................................................20

*Saltzman v. Pella Corp.,*
  257 F.R.D. 471 (N.D. Ill. 2009) .........................................................................21

*Scott v. GlaxoSmithKline Consumer Healthcare, L.P.,*
  05cv3004, 2006 WL 952032 (N.D. Ill. April 12, 2006)....................................14, 21

*Simonian v. Weber-Stephen Products Co.,*
  272 F.R.D. 218 (N.D. Ill. 2011) .........................................................................11

*Simpson v. Fireman's Fund Ins. Co.,*
  231 F.R.D. 391 (N.D. Ca. 2005) ........................................................................20

*Sinclair v. United Healthcare of Georgia ,Inc.,*
  No.1:96-CV-3421, 1998 WL 34080882 ................................................................20

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................14

*Von Koenig v. Snapple Beverage Corp.,*
   713 F. Supp. 2d 1066 , (E.D.Cal. 2010) ...............................................................15

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012)...........................................................................17

**<u>Statutes</u>**

*Civil Code §1750* ...............................................................................................1

*Bus. & Prof. Code §17200* ................................................................................1

Plaintiff Luis Guilin, submits this response in opposition to Defendant Walgreen Co.'s ("Defendant" or "Walgreen") motion to dismiss the Third Amended Class Action Complaint ("TAC"), and in support hereof state**s:**

## I.     INTRODUCTION

Plaintiff's Third Amended Class Action Complaint ("TAC") [1] asserts claims for violations of the Consumers Legal Remedies Act ("CLRA"), Civil Code §1750, *et seq.,* and the Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200, *et seq.*  Defendant attempts to recast this consumer protection action as something it is not - a lack of scientific substantiation case - and then argues that because there is no private right of action for unsubstantiated claims, Plaintiff's FAC should be dismissed in its entirety. Defendant recasts this argument in a variety of contexts, arguing that the complaint should be dismissed.

To the contrary, the TAC alleges false and deceptive advertising, namely that Defendant presented a uniform message on the packaging of its Glucosamine Chondroitn Complex Product's ("Products") that these products provide specific joint health benefits, when in fact they do not. Plaintiff supports and lends plausibility to his allegations that Defendant's joint health benefit representations are false, misleading and likely to deceive the public by alleging that clinical studies have proven that the ingredients in Defendant's Products do not provide the represented joint health benefits. Making statements that a product has attributes which it does not have is actionable deceptive advertising under the UCL and CLRA. For these and other reasons set forth below, Defendant's motion to dismiss should be denied.

---

[1] The initial complaint in this action was filed under Illinois law and on behalf of a different plaintiff.  The Second Amended Class Action Complaint and the TAC are virtually identical other than for the fact that the TAC includes a damages request following the expiration of the 30-day notice period subsequent to the filing of the SAC.  Thus, the Third Amended Class Action Complaint is, in actuality, the first complaint filed by Plaintiff and the first complaint filed under California law.

## II.  SUMMARY OF TAC

Walgreens markets and sells six Glucosamine Chondroitin products ("Products").  All six products share the same name ("Glucosamine Chondroitin Complex"), all commonly  represent on the front of their labels that they "rebuild cartilage" and "lubricate joints" and four of which also make the common ancillary representation that they are "formulated to help with joint comfort." (TAC ¶ 1).[2]  The key message on the labeling of each product is that the purchasers of these products will experience relief of joint pain/problems through the rebuilding of joint cartilage and the lubrication of joints. Each of the labels also commonly depict persons running with circles around their ankle, knee, hip and elbow joints.  A simple review of the front of the six labels (Exhibits A- F, attached to Def. Mem.) demonstrates that they are virtually identical as to physical layout and representations (health benefit representations on left and then runners to the right with joints circled).

As alleged in the TAC, Glucosamine and Chondroitin – the two major ingredients in all of Defendant's Products and the two ingredients prominently displayed in the name of each Product ("Glucosamine Chondroitin Complex") - are, based upon scientific evidence, not effective for the joint health benefits represented on the front of the labels of Defendant's Products.  (TAC ¶¶ 3, 13, 14, 15, and 16).  As corroboration for and in support of Plaintiffs' lack of efficacy allegations, the TAC also cites to numerous clinical studies of Glucosamine and Chondroitin that have concluded that neither Glucosamine nor Chondroitin taken alone or in combination (1) rebuild cartilage or (2) provide any other joint pain relief properties such as lubricating joints or providing joint comfort.  (TAC ¶¶ 3, 18-25). The TAC also alleges that all of the other ingredients contained in these products, based upon the scientific evidence, do not

---

[2] The Product Plaintiff purchased made all three of the joint health representations.

2

provide the joint health benefits represented on Defendant's Product labels.  (TAC ¶¶ 16 and 26-27).

In the spring of 2011 at a Walgreen store in El Centro, California, Plaintiff read each of the three representations on Walgreen's product labeling for its Glucosamine Chondroitin Complex with MSM product[3] and in reliance on these representations on the front of the label purchased a bottle.  (TAC ¶ ¶ 9 and 31).  Defendant's representations and omissions were a material factor in influencing Plaintiff's purchase decision. *Id.*.  After using an entire bottle, Plaintiff "did not experience any of the represented joint health benefits." ( TAC ¶ 9). Believing that if he continued to use the product it would ultimately work, Plaintiff purchased another bottle.  After using half of the second bottle, he discontinued using it because he had not experienced any of the represented joint health benefits.  *Id.*

The TAC alleges that there is no other reason to purchase these products other than to obtain one or all of the joint health benefits represented on the product labeling, and that Plaintiff and the Class would not have purchased the products had they known that Defendant's joint health benefit representations were false and misleading and that clinical studies had found the ingredients to be ineffective for the represented joint health benefits. (TAC ¶¶ 9 and 32).  As a result, Plaintiff and the Class have been injured in that they were deceived into purchasing Products that have been proven to not perform as advertised (TAC ¶¶ 5 and 32).  Plaintiff seeks to enjoin Defendant's false and misleading conduct and to obtain redress for himself and the Class (TAC ¶ 6).

## III.    ARGUMENT

---

[3] The operative language is that he relied on each of the "joint health representations on the front of the label" (*Id.*) and "joint health benefit representations" is previously defined in the TAC as being any one of the following three joint health benefits (1) rebuild cartilage, (2) lubricate joints and (3) joint comfort (TAC ¶ 2).

A.    UNDER CALIFORNIA LAW – INJURY OCCURS AT THE TIME
      OF PURCHASE

Defendant contends that in order to state a consumer fraud claim under California law, in addition to alleging that the product did not work for him, Plaintiff must also allege particulars about his physical condition, why he needed the product and how he knew that the product did not work for him. (Def. Mem. p. 5). This argument completely misapprehends what constitutes consumer fraud injury and damage.  "[I]n the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the *moment of purchase*." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 334 (2011)(emphasis added); *see also In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F.Supp.2d 993, 1002 (S.D. Cal. 2011) ("[T]he injury to Plaintiffs occurred at the time they purchased the Hydroxycut products and did not receive the benefit of their bargain.") "Injury in fact" under the UCL and CLRA require that Plaintiff have "lost money or property" as a result of a defendant's misleading conduct.  *See* Cal. Bus. & Prof. Code ¶17204; Cal. Civ. Code ¶1780(a); *see in re Tobacco II Cases*, 46 Cal. 4th 298 at 314 (2009).  And, under the UCL fraudulent prong claim all that the Plaintiff must plead is that he actually relied on the challenged advertising and that in the absence of that reliance would not have purchased the product.  *See In re Tobacco II Cases*, 46 Cal.4th at 325-28.

Thus, all that is required in order to state a claim under California law is that a defendant's representations were false, that the plaintiff relied upon these representations in making his purchase decision and that plaintiff paid more for the product or would not have purchased the product if the truth had been known. [4]  As applied here, Plaintiff's injury occurred when he relied upon Defendant's false representations and in reliance purchased Defendant's

---

[4] It should be noted that while the class representative is required to plead and prove his or her reliance, individualized proof of deception, reliance and injury is not required of class members. *In re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009).  *See also, Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1293 (2002)(causation as to class members proved or at least inferred if representation is material); *In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 156-57 (2010)(causation as to class members proved by materiality).

product – nothing more need be plead. *See also, Cardenas v. NYBT*, 2012 WL 1593196 * 5, No. Civ.S-11-1615 LKK/CKD (E.D. Ca., May 4, 2012) ("In the instant case, Plaintiff's allegation that she lost money on the ineffective Osteo Bi-Flex product is sufficient to meet the standing requirement of economic injury under the UCL, as to the Osteo Bi-Flex Regular Strength product that she purchased.")

Thus, as a matter of law, Plaintiff does not have to plead that the product did not work for him (though he has), why Plaintiff or any Class member thought they needed Defendant's Product, or what transpired after Plaintiff's or any Class member's purchase - as those facts are irrelevant for determining injury and damage. This is particularly true here, where as alleged in the (TAC ¶ 20), clinical studies have shown that the "Placebo Effect"– meaning that people using Glucosamine and Chondroitin may subjectively believe that they have experienced some benefit even though the Product is no more effective than a sugar pill – may lead some people to believe that ingredients have provided some relief. [5]

      **B.    PLAINTIFF'S CLAIMS ARE NOT "LACK OF SUBSTANTIATION CLAIMS" - PLAINTIFF HAS ALLEGED THAT DEFENDANT'S PRODUCTS ARE INEFFECTIVE AND DO NOT WORK AS REPRESENTED**

Despite the fact that the TAC plainly and clearly alleges that Defendant's representations are false and misleading because the scientific evidence is that the ingredients in Defendant's products do not work as represented and are ineffective in providing the represented joint health

---

[5] "The placebo effect can be defined as an inert or innocuous treatment that works not because of the therapy itself, but because of its suggestive effect." *F.T.C. v. QT Inc.*, 448 F.Supp.2d 908, 939 (N.D.Ill. 2006) *aff'd, F.T.C. v. QT, Inc.*, 512 F.3d 858, 862-63 (7th Cir. 2008)("The placebo effect is well established…Tell the patient that the pill contains nothing but sugar, and there is no pain relief; tell him (falsely) that it contains a powerful analgesic, and the perceived level of pain falls… The placebo effect cannot justify fraud in promoting a product."). *See also, F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1100 (9th Cir. 1994)(where "a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some consumers may experience positive results. In such circumstances, the efficacy claim '"is 'misleading' because the [product] is not *inherently* effective, its results being attributable to the psychosomatic effect produced by the advertising and the marketing of the product.'"")(emphasis added by Court).

benefits, Defendant contends that Plaintiff's claims are nevertheless "lack of substantiation" claims. (Def. Mem. pp. 6-10). Citing *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm.*, 107 Cal. App. 4th 1336, 1342 (2003) and *Stanley v. Bayer Healthcare LLC*, No. 11cv862, 2012 U.S. Dist. Lexis 47895, at \*9-10 (S.D. Cal. Apr. 3, 2012), Defendant contends that private plaintiffs cannot assert "lack of substantiation" claims under the UCL or CLRA. (Def. Mem. p. 6). Defendant then notes that the original Complaint and the First Amended Complaint were purportedly "replete" with allegations that Defendant lacked substantiation for its representations. (Def. Mem. p. 7).

Defendant, however, fails to point out that in these prior pleadings, the lack of substantiation allegations followed and were corroboration of the primary allegations that the scientific evidence had proven that Defendant's products were ineffective (*See e.g.* Docket No. 1, ¶¶ 1, 12-16 and Docket No. 10 ¶¶ 1, 12-16). Moreover, allegations made in a prior complaint are superseded by an amended complaint and thus are irrelevant for purposes of evaluating a subsequent complaint. *See*, *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) (prior pleading withdrawn as to all matters not restated in amended pleading and becomes "functus officio").

Most important, however, is the fact that the TAC makes no allegations regarding Defendant lacking substantiation for its joint health benefit representation – the phrase "lack of substantiation" is nowhere to be found in the TAC. Defendant's assertion that the core of the TAC is still a lack of substantiation claim (Def. Mem. 8) ignores that the TAC (1) explicitly alleges that Defendant's products are ineffective and do not provide the represented health benefits stated by Defendant on its labeling and (2) alleges that the scientific evidence, including clinical studies, have proven that the active ingredients in Defendant's product, and in particular

6

its two main ingredients, Glucosamine and Chondroitin, are ineffective and do not "rebuild cartilage" "lubricate joints" or provide "joint comfort."

In *Cardenas, supra,* the District Court sustained a complaint regarding the Osteo Bi-Flex Glucosamine Chondroitin products where defendant made virtually identical "lack of substantiation" arguments. The complaint in *Cardenas*, like the TAC here, alleged that clinical studies demonstrated that the ingredients in the Osteo Bi-Flex products (the same ingredients that are in Defendant's products here) were ineffective. Further, the complaint in *Cardenas*, like the previous SAC here, alleged that in addition to clinical studies proving that Glucosamine and Chondroitin were ineffective, the defendant lacked substantiation for its joint health benefit representations (Exhibit A ¶¶ 1, 16-23, 27, 29, and 59 . Even though the complaint in *Cardenas* contained allegations regarding the defendant's lack of substantiation, the court in *Cardenas* rejected the defendant's lack of substantiation contentions and denied the motion to dismiss based upon the plaintiff's allegations that clinical studies "had found no causative link" between Glucosamine and Chondroitin and the represented joint health benefits. *Id.* at *9-10.

Here, in addition to alleging inefficacy like the complaint in *Cardenas* (TAC ¶ ¶ 31 and 32), the TAC goes further and describes and identifies examples of the clinical studies and scientific evidence that support and give plausibility to Plaintiff's allegations that the Products do not provide the joint health benefits represented on Defendant's product labels – studies that all concluded that the ingredients in Defendant's Glucosamine Chondroitin Complex products are ineffective and do not provide the joint health benefits represented on Defendant's packaging. (TAC ¶¶ 18-27).[6]

---

[6] Unlike the TAC here, the complaint in *Cardenas* did not identify the studies that established inefficacy, and instead alleged, "Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Osteo Bi–Flex products and the prevention of joint degeneration or relief from joint discomfort." *Cardenas*, at *2. Nevertheless, the court in *Cardenas* sustained the complaint.

The cases Defendant cites in support of its "lack of substantiation" argument are not applicable here. *See King Bio Pharm.*, 107 Cal. App. 4th at 1342 (plaintiffs did not allege and did not put on any evidence to establish that the products were ineffective and argued that it was defendant's burden to prove that they were effective)[7]; *Stanley*, 2012 U.S. Dist. Lexis 47895, at *5 (plaintiff solely asserted a lack of substantiation claim rather than an inefficacy claim); *Chavez v. Nestle USA, Inc.*, No. CV 09-9192, 2011 WL 2150128, at *5 (C.D. Cal. May 19, 2011) (plaintiffs solely asserted a lack of substantiation claim); *Barrera v. Pharmavite, LLC*, No. CV 2:11-04153, at 2 (C.D. Cal. Sept. 19, 2011) (Exhibit G attached to Def. Mem.)[8]; *Fraker v. Bayer Corp.*, No. CV F 08-1564, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) (plaintiffs solely alleged lack of substantiation).

### C. THE STUDIES CITED IN THE TAC LEND PLAUSIBILITY TO AND SUPPORT PLAINTIFF'S INEFFICACY ALLEGATIONS AS TO ALL PURCHASERS OF DEFENDANT'S PRODUCTS

Defendant argues that the TAC should be dismissed because the studies cited in the TAC only concerned patients with osteoarthritis and are not relevant to the representations it makes on its labels. (Def. Mem.8-10). Defendant's arguments are disingenuous at best and, at a minimum, present questions of fact that should not be addressed on a motion to dismiss.

Defendant makes three contentions in this regard: (1) that it has made no representations about providing relief of arthritis on its labels, (2) that these studies purportedly say nothing about whether its products are ineffective for people not suffering from arthritis, and (3) that

---

[7] Court also went on to state that the falsity of advertising could be established by testing or scientific literature. *Id* at 1348. Both of which are pled in the TAC.

[8] It is of interest to note that the Plaintiff in *Barrera* filed an amended complaint similar to the SAC in this action, which alleged both that the products, in that case Tripleflex Gluscosamine Chondroitin products, were ineffective and that the defendant "lacked substantiation" for its representations (Exhibit B hereto). In fact, the SAC in *Barrera* did not, like the TAC here, plead specific studies and, instead, like the SAC here, generally alleged that studies had established the inefficacy of glucosamine and chondroitin. *Id.* at ¶¶ 1, 12-17. Rather than moving to dismiss the SAC *Barrera* complaint, which clearly stated a claim under California law, the defendant chose to answer. (Exhibit C attached hereto).

Plaintiff has not cited to any clinical studies of Defendant's products. (Def. Mem. 8-10). The first contention, of course, ignores that Defendant's labeling is clearly directed at and, as a result, the majority of persons who purchase these products are persons suffering from osteoarthritis.[9]

With respect to the second contention, for those persons who are "healthy" or do not have arthritis and purchased Defendant's Products to obtain one or more of the represented joint health benefits, studies performed on persons with arthritis are a proxy for whether these ingredients provide joint health benefits to all purchasers of Defendant's products. Experts in the field deem these studies to be proxies for all persons who might use products with these ingredients,[10] in part, because one can only study whether these products provide joint relief on people exhibiting symptoms. Persons with arthritis exhibit both symptoms (1) diminishing joint cartilage and (2) the resultant lack of joint mobility/lack of joint lubrication/pain that is caused by cartilage breakdown. Thus, testing to see whether these ingredients provide joint health benefits to persons who exhibit the target symptoms purportedly alleviated by these products is the only way to see if these ingredients provide the represented joint health benefits in humans. To put it another way, testing "healthy" persons who had no joint pain symptoms and healthy cartilage would not allow for the detection of any effects because, under either circumstance, the

---

[9] For example, the University of Chicago Medicine web site describes the symptoms of osteoarthritis as a breakdown of joint cartilage which in turn interferes with joint mobility and causes joint pain and stiffness. *See*, http://www.uchospitals.edu/online-library/content=P00061. These are the conditions for which Defendant's Products represent that they provide relief. To the extent that the fact these products are primarily pitched to persons with arthritis needs to be pled, in that the purported relief that the products provide are directly aligned with the symptoms of arthritis, Plaintiff requests leave amend to plead these facts. *See*, *Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002)(leave to amend should be granted where amendment would not be futile) and *In re Brand Names Prescription Drugs Antitrust Litigation*, 177 F.R.D. 414 (N.D. Ill. 1997)(amendment futile only where it (1) merely restates previously determined claim, (2) fails to state a valid theory of liability, or (3) cannot withstand a motion to dismiss).

[10] While it is inferable from the allegations of the TAC, to the extent that the Court requires that it be expressly pled, Plaintiff requests leave to amend to plead that these studies on persons with arthritis symptoms are deemed by experts in the field to be proxies for evaluating whether Glucosamine and Chondroitin provide joint health benefits in all humans. A similar allegation is contained in the FAC in *Pearson v. Target*, also pending before this Court, No. 11-CV-07972 , Dkt. No. 21 ¶ 22 fn. 7.

healthy study subject would merely state that they were still fine. Moreover, whether clinical studies performed on arthritis sufferers serve as a proxy to establish inefficacy for all users is a question of fact and not a question to be decided on a motion to dismiss.

As to the third contention, the studies cited in the TAC tested the two primary active ingredients contained in all of Defendant's products – Gluscosamine and Chondroitin – and found them to be ineffective. Thus, for purposes of stating a plausible claim of inefficacy, Plaintiff need not also plead that there were studies performed specifically on Defendant's Products, as the pivotal issue is the efficacy of the specific ingredients. Defendant also contends that the studies referred to in the TAC involved different ingredients and different amounts of glucosamine chondroitin. (Def. Mem. 8). Not only is this contention improper on a motion to dismiss as being outside of the complaint, Defendant is wrong. The studies, all of which are in the public domain, all involved glucosamine in the industry-wide standard amounts – 1500 mg of Glucosamine daily – the same amount recommended on each of Defendant's products. Further, most of the studies also involved Chondroitin. (*See*, Exhibits A-E attached to Def. Mem. ).

Moreover, Plaintiff's allegations that Defendant's product labels represent that they will provide the represented joint health benefits to all persons who purchased the products, including both arthritis sufferers and persons not suffering from arthritis, is not "concocted", as Defendant contends. (Def. Mem. 9-10) This is the plain meaning to be derived from the statements that are in large bold print on the front of each of Defendant's products. The Product's packaging offers no qualifications or limitations as to who may gain the represented joint health benefits. Thus, it is reasonable and fair to conclude that Defendant's representations mean that any person buying

its products will obtain these joint health benefits for any joint condition or ailment they may seek to aid.[11]

Thus, at a minimum, the allegations regarding these studies establish a "nonnegligable probability" that Defendant's representations are false as they apply to all persons who might take its Products for the joint health benefits it represents on the front of its labels. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (though the probability "need not be so great a probability as such terms as -preponderance of the evidence" connote.") In short, the studies cited in the TAC provide sufficient "plausibility" that Defendant's Products are ineffective for all those who purchased them. See, *Simonian v. Weber-Stephen Products Co.*, 272 F.R.D. 218, 220 (N.D. Ill. 2011).

### D. DEFENDANT'S PURPORTED DISCLAIMERS AND MONEY BACK GUARANTEES ARE OF NO CONSEQUENCE

Defendant also contends (Def. Mem. 5 and 8) that because each label contains a statement, in small print, that "[t]his product is not intended to diagnose, treat, cure, or prevent any disease" this somehow trumps all of the much bolder printed statements that Defendant makes on its labeling about the products' rebuilding cartilage, lubricating joints and providing joint comfort. Defendant also argues that the studies cited by Plaintiff in the TAC involving patients with arthritis are somehow not relevant because Defendant has purportedly, thru this disclaimer, expressly stated that the products are not intended to treat the symptoms of arthritis. As a threshold matter, whether the disclaimer that the products are not intended to "treat, cure or prevent any disease" would be interpreted by a reasonable consumer as meaning that it was not

---

[11] Defendant's citation to *Stanley* (Def. Mem. p. 10) is misplaced. In *Stanley*, the plaintiff bought the product to relieve her then existing bout of diarrhea when the Defendant made no representations about relieving diarrhea. Thus, the plaintiff in *Stanley* bought the product for a purpose that the product was not represented to provide. *Stanley,* at * 9. Here, Plaintiff alleged he relied upon the very joint health representations made on Defendant's labeling (that it would rebuild cartilage, provide joint mobility and joint comfort) in making his purchase decision.

intended to provide relief of arthritis symptoms, is a question of fact, particularly given the fact that the Products' labeling, in far bolder lettering, states that the products will provide relief of what are commonly known to be the primary symptoms of arthritis.

As noted in *Johns v. Bayer Corp.*, No. 09cv1935, 2010 WL 2573493 (S.D. Cal. 2010) with regard to the very same "not intended to treat disease language" to which Defendant cites here, the Court held that on a motion to dismiss, "[w]hile there are disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at this stage of the litigation." *Id.* at *4. Thus, at a minimum, the effect of this purported disclaimer is a question of fact.

Similarly, as the Court in *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 12 n.9 (1st Cir. 2010) noted, claiming that a product provides health benefits and then stating in small print that it is not intended to cure or treat a disease, "leaves an overall impression of nonsense, not clarity." Likewise, it is absurd for Defendant to contend that the joint health benefit representations it makes on the front of its Products' labels are not directed, at least in part, to persons who suffer from arthritis. While the labels may not say the words arthritis, the joint health benefits Defendant represents they provide are conditions caused by arthritis and thus it is reasonable to infer that persons suffering from arthritis would purchase these products for the represented relief.

Defendant's contention that Plaintiff did not allege that he sought to avail himself of the "100% Satisfaction Guaranteed… . or Your Money Back" that is on the sides of each label (Def. Mem. p. 5), as if this offer constitutes a "get out of jail free" card for any falsity on the labeling of its products, has been rejected by both the Seventh and Ninth Circuits. In *F.T.C. v. Think Achievement Corp.,* 312 F.3d 259, 261 (7th Cir. 2002), in rejecting the defendant's money back

guarantee defense, the court stated, ö[t]his might be a tenable argument if obtaining a refund were costless, but of course it is not. It is a bother. No one would buy something *knowing* that it was worthless and that therefore he would have to get a refund of the purchase price.ö *See also F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994); *Montgomery Ward & Co. v. F.T.C.*, 379 F.2d 666, 671 (7th Cir. 1967)(Court noting that if this defense were allowed, ö[a]nything might then be advertised as long as unsatisfied customers were returned their money.ö)[12]

### E.  THE TAC STATES A CLAIM UNDER BOTH RULE 8 AND RULE 9 (b).

#### 1.  Plaintiff Has Satisfied Rule 8(a).

A plaintiff, need not prove her case at this stage of the litigation, but need only give the defendant öfair noticeö of the claim and öthe grounds upon which it rests.ö *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (*citing Twombly*).  Plaintiff has done so here and thus has satisfied Rule 8 by alleging: (1) that Defendantøs joint health benefit representations are false and misleading because the Products do not work as represented (TAC ¶¶ 1, 3, 13-16, 18-28 ), (2) that clinical studies and other scientific evidence have proven that the ingredients (most importantly the two main ingredients ó Glucosamine and Chondroitin) are not effective in rebuilding joint cartilage, lubricating joints, or providing joint comfort (*Id.*), (3) that he relied on Defendantøs joint health benefit representations in purchasing Defendantøs product (TAC ¶¶ 9 and 31), and (4) as a result suffered damage in the amount of the purchase price (TAC ¶¶ 5, 9 and 32).

---

[12] That these three cases involved FTC actions does not and should not undercut their logic and equal applicability to private plaintiff consumer actions under the CLRA and UCL.  "[C]laims for violation of the FTC Act are analogous to, if not entirely consistent with, claims for violation of California's CLRA and UCL ..." *F.T.C. v. Lights of America, Inc.*, 760 F.Supp.2d 848, 854 (C.D.CA. 2010).

2.    **The TAC Satisfies Rule 9(b) Pleading Requirements by Alleging The Who What When and Where and How of Defendant's Consumer Frauds**

Rule 9(b) only requires that any fraud allegations be "specific enough to give defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quotation marks omitted). Put another way, a plaintiff need only provide the "who, what when, where and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120 at 1124, 1126 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 at 1106 (9th Cir. 2003). *See also Scott v. GlaxoSmithKline Consumer Healthcare, L.P.*, 05cv3004, 2006 WL 952032, at *4 (N.D. Ill. April 12, 2006)("To satisfy Rule 9(b), [Plaintiff] only needs to state when and where she herself was deceived by the statements she mentions and when and where she purchased the drugs at issue.")

The TAC specifies the exact language Defendant has used to describe the Products on its packaging and advertisements. (TAC ¶¶ 1, 2, 13 and 17). Plaintiff further alleges the place the advertising was seen (the Product packaging), the place of purchase (a Walgreen's store in El Centro, CA), the time of exposure, review and purchase (in late 2010), which Product Plaintiff purchased (Glucosamine Chondroitin with MSM), and the specific joint health claims Plaintiff was exposed to and relied upon in making his purchase. (TAC ¶¶ 2 (and footnote accompanying text) and 9).[13] Plaintiff further alleges what is false about the Products' representations – the Products do not rebuild cartilage, lubricate joints nor provide joint comfort as represented (TAC

---

[13] For these reasons, Defendant's contentions that Plaintiff has not pled the particulars of his reliance upon Defendant's representations (Def. Mem. 13-14) are without merit. See, *Scott, supra* *4. Likewise, Defendant contends that Plaintiff has not alleged that he relied upon Defendant's representations with respect to his second purchase of Defendant's product. It is clear that Plaintiff alleged that he relied upon the representations for his first purchase and thus it is reasonable to infer that this same reliance was sustained as to his second purchase, since the TAC alleges that he believed that he just needed to continue to take the product for a longer period for it to work. Nevertheless, Plaintiff need only allege sufficient facts for his initial purchase to state a claim here.

¶¶ 3, and 13-16) and clinical studies and other scientific evidence have proven that the ingredients in Defendant's products do not provide the joint health benefits represented. (TAC ¶¶ 18-27). None of the cases cited by Defendant require more. As such, the TAC meets Rule 9(b)'s requirements and provides all pertinent details concerning the content, place, and time of the particular deceptive misrepresentations made to the Plaintiff by Defendant. *See, e.g., Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066 at 1077-78, (E.D.Cal. 2010). Thus, Defendant cannot genuinely contend that it is not now on "notice of the particular misconduct" against which it must defend. *Neubronner v. Milken,* 6 F.3d 666, 671-72 (9th Cir. 1993).

### F.    PLAINTIFF'S CONSUMER FRAUD CLAIMS ARE PLAUSIBLE

Confronted with this reality, Defendant contends that Plaintiff's claims are "factually implausible." (Def. Mem. pp. 12-13). In this regard, Defendant repeats the same saw – that the core of Plaintiff's claims are that Defendant's representations are false because "studies of different formulations containing some of the ingredients in the Products supposedly suggest that the ingredients are ineffective in treating or curing osteoarthritis." (Def. Mem. p. 12).

Defendant then contends that Plaintiff cannot cite to any studies evaluating the effectiveness of Defendant's products and that, as a result, the TAC requires "an unwarranted inferential leap" that Defendant's representations are false and deceptive. (Def. Mem. p. 13). Apart from the fact that whether these studies prove Defendant's representations to be false is a question of fact and not a question of law, Defendant's contention is absurd on its face. The TAC cites scientific evidence, including clinical studies that demonstrate that the two main ingredients and other minor ingredients in Defendant's products are ineffective. (TAC ¶¶ 18-27) To infer from the allegations about these studies that Defendant's products are ineffective for the represented joint health benefits is a highly reasonable and logical inference. That the studies

15

involve patients with osteoarthritis does not require an unwarranted inferential leap to conclude that Defendant's products are also ineffective for all persons using these products. In fact, quite the opposite is true – if the ingredients are proven to not work for people with actual symptoms the logical inference is that they do not work for people without these symptoms. Moreover, experts in the field have deemed such studies as proxies for whether such ingredients are effective for all persons who might use products containing these ingredients. Thus, this Court should hold as the court in *Cardenas* held, regarding similar allegations invoking the same clinical studies regarding the Osteo-BiFlex glucosamine chondroitin products:

> If, in fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation, nor have clinical cause and effect studies found a causative link between chondroitin supplementation and joint renewal or rejuvenation, then Defendants' assertions regarding the benefits of glucosamine and chondroitin are most likely false. Because the purported joint benefits of the regular strength product are based on Defendants' assertions of the efficacy of the particular ingredients glucosamine and chondroitin, it is reasonable to infer that the regular strength product's asserted overarching benefits of improved mobility, improved joint comfort, and renewal of cartilage, are also false. Thus, the court finds that Plaintiff's cited clinical cause and effect studies are sufficiently specific to provide Defendants notice of what is allegedly false or misleading about the Osteo Bi-Flex representations, and why those representations are alleged to be false, as required by Rule 9(b).

*Cardenas, supra*, * 10.

## G. PLAINTIFF HAS ADEQUATELY PLED AN OMISSION CLAIM

The TAC alleges that Defendant was fully aware of the results of the clinical studies showing the ingredients in its Products did not provide the represented joint health benefits but omitted to disclose this to Plaintiff and the Class. (TAC ¶ 3). Plaintiff alleges that if he had known about these studies he would not have purchased Defendant's product (TAC ¶ 9) and that he and the Class were deceived by these omissions (TAC ¶ 53). In *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 835 (Ca.App. 2006), the court held that an

16

omission is actionable where "the omission [is] contrary to a representation actually made by the defendant, **or** an omission of a fact the defendant was obliged to disclose." (emphasis added). Here, the TAC plainly alleges that Defendant omitted to disclose the scientific evidence that was contrary to the representations it made on its Product's labels – scientific evidence that concluded that the ingredients in Defendant's Products did not work as represented. As such, Defendant's contention that it was under no duty to disclose, while not supported by the law,[14] fails to address the fact that Plaintiff has stated an omissions claim under the first prong of the *Daugherty* formulation.

### H. DEFENDANT'S STANDING ARGUMENT IS WITHOUT MERIT

Defendant contends that Plaintiff lacks standing to bring claims as to all of Defendant's Glucosamine Chondroitin Complex products because Plaintiff only purchased Defendant's Glucosamine Chondroitin Complex with MSM product. Defendant asserts that Plaintiff was not "injured" by the representations on the labels of the other Glucosamine Chondroitin Complex products and cannot assert claims on behalf of purchasers of the other products. (Def. Mem. 16-19). This contention conflates the concept of standing with Rule 23 and is contrary to the weight of authority in both the Ninth and Seventh Circuits, including a decision rendered by this Court.

Standing is a question solely addressed to the named plaintiff and is met where, as here, Plaintiff alleges injury, causation and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed. 2d 351 (1992) (standing requirements met where plaintiffs alleges, injury, causation and redressability). Specifically, Plaintiff has alleged that he purchased Defendant's Glucosamine Chondroitin Complex with MSM, was deceived in this purchase as a

---

[14] Contrary to Defendant's contentions otherwise, Defendant was under a duty to disclose: (1) Defendant had exclusive knowledge of the scientific evidence not known to Plaintiff and the class; (2) by not disclosing this known scientific evidence on its labels, Defendant actively concealed material facts from Plaintiff and the Class; and (3) Defendant made partial representations but also suppressed material facts regarding the scientific evidence. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1142 (9th Cir. 2012).

result of Defendant's false and deceptive representations, and if he had known the truth about the product he would not have purchased it (TAC ¶¶ 9 and 32). This satisfies Article III, as well as UCL and CLRA, standing requirements. *See, e.g., In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09-md-2087, 2011 WL 2135232, at *6 (S.D. Cal. May 31, 2011) (standing properly alleged where, as here, plaintiffs alleged that instead of receiving effective products, they received products that were ineffective and, as a result, they did not get what they paid for); *Cholakyan v. Mercedes-Benz U.S.A., LLC*, 766 F.Supp.2d 1220, 1228-29 (C.D.Cal. 2011); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 327-28 (2011). Thus, there can be no doubt that Plaintiff has standing to bring his claims against Defendant. *See also Askin v. Quaker Oats, Co.*, No. 11 CV 111, 2011 WL 5008524, at *5 (N.D. Ill. October 12, 2011) (allegation that plaintiff would not have purchased product absent misleading statements states a claim for economic injury under the Illinois Consumer Fraud Act); *In re Aqua Dot Prods. Liability Litig.*, 654 F.3d 748, 749 (7th Cir. 2011) (financial injury, even if slight, creates standing under ICFA).

As to whether Plaintiff may seek to represent Class members who purchased other products with similar representations, the majority of courts have answered this in the affirmative and the few that have not are outliers based upon faulty reasoning. Thus, in *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530-31 (C.D. Cal. 2011), the plaintiff sought to represent a class that included purchasers of both a gelcap and liquid form of a dietary supplement – the liquid representing to have a six times better absorption rate and the gelcap making a substantially different representation – a three times better absorption rate. The plaintiff had only purchased the liquid form, yet the court rejected defendant's contention that the plaintiff lacked standing as to both products, holding that whether plaintiff could represent a class of

18

those with similar but not identical claims was not a standing issue but one that was to be determined based upon typicality and commonality under Rule 23. *Id.*[15]

Likewise, most recently, in a case involving eight Osteo Bi-Flex glucosamine products, only one of which the plaintiff had purchased, the court rejected the very same standing arguments raised by Defendant here, stating that the reasoning of *Bruno* was more öpersuasiveö than the small line of cases upon which Defendant relies (see discussion below) and that the court would analyze ösolely under Rule 23 whether plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo Bi-Flex products.ö *Cardenas, supra,* \*7.  This position has been adopted by numerous other courts. *See also Forcellati v. Hyland's, Inc., CV 12-1983,* 2012 WL 2513481  (C.D.Cal. June 1, 2012) (rejecting same lack of standing argument, citing to *Cardenas* and *Bruno*); *Donahue v. Apple Inc., 11-cv-05337,* 2012 WL 1657119 \*6 (N.D. Cal. May 10, 2012)(rejecting cases relied upon Defendant); *Carideo v. Dell, Inc.,* 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (court rejected argument that plaintiffsøclass claims for products that they did not purchase should be dismissed, because plaintiffs, like plaintiffs here, made the same core allegations regarding all of the products); *Brazil v. Dell, Inc.*, No. C-07-01700, 2008 WL 4912050, at \*5 (N.D. Cal. 2008) (rejecting same standing argument); *Medrazo v. Honda of North Hollywood*, 166 Cal. App. 4th 89, 98-99 (2008) (rejecting standing and lack of typicality arguments); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 378 (N.D. Cal. 2010); *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008) (holding that

---

[15] It is of interest to note that upon analyzing this issue under the lens of Rule 23, the court concluded that because the representations of six times versus three times the absorption rate were so different and that one might be true and the other not, that the plaintiff lacked typicality. *Id.* at 534.  In contrast, here, all of Defendant's Products' labels make two identical/common representations and four other contain an additional common ancillary representation.   Moreover, the question of whether the similar if not identical representations here are false and deceptive will turn on an analysis of the same scientific evidence.

plaintiff¢s claims are typical even though plaintiff did not purchase all five of defendant¢s products).

Both the Seventh Circuit and this Court have reached the same conclusion.  In *Payton v. County of Kane*, 308 F.3d 673, 678-681 (7th Cir. 2002), the Seventh Circuit rejected a lack of standing argument where the two named plaintiffs had claims against only two out of nineteen defendants, holding that this was not a standing question but, rather, was a Rule 23 question.  As the Seventh Circuit noted in *Payton*, a plaintiff has standing to challenge a *practice* where öthe injury is of a sort shared by a large class of possible litigants.ö *Payton*, 308 F.3d at 679 (quoting *Fallick v. Nationwide Mutual. Insurance. Co*, 162 F.3d 410, 423 (6th Cir. 1998)).[16]  If, as the Seventh Circuit held in *Payton*, the named plaintiffs could, if they met the requirements of Rule 23, proceed with a class action against defendants against whom they had no claims, *a fortiori*, Plaintiff¢s complaint here should not be dismissed.  He should be allowed to seek a class action against Defendant, a defendant against whom he has claim, on behalf of purchasers of  similar

---

[16] *See also See also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011); *Raltson v. Mortgage Investors Group, Inc.*, No. 5:08-cv-00536, 2011 WL 4081696, at *3 (N.D. Cal. Sept.12, 2011); *Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 188 (W.D. NY. 2011); *Greenwood v. Compucredit Corp.*, No. 08-04787,, 2010 WL 4807095, at *3 (N.D. Cal. Nov. 19, 2010); *Edwards v. 21st Century Ins. Co.*, No. 09-43642010 WL 2652247, at *4 (D.N.J. June 23,2010) ("[A]class representative's lack of standing to assert claims with slightly different factual bases is not grounds for dismissal of those claims if the representative otherwise has standing to sue the defendant against whom these claims are asserted. . . "); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 695 (S.D. Fla. 2010); *Bzdawka v. Milwaukee County*, 238 F.R.D. 469, 473 (E.D. Wisc. 2006)(Rule 23 question and not standing question); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. C-03-054212005 WL 3801587, at *3(N.D. Cal. Nov. 23, 2005 ; ; *In re VeriSign, Inc.*, No. C 02-02270, 2005 WL 88969, at *5 (N.D. Cal. Jan. 2005); *In re Rhythms Secs. Litig.*, 300 F. Supp. 2d 1081, 1085-86 (D. Colo. 2004); *Clark v. McDonald's Corp.*, 213 F.R.D. 198). , 204-5 (D.N.J. 2003); *Sinclair v. United Healthcare of Georgia, Inc.*, No.1:96-CV-3421,  1998 WL 34080882, at *2 (N.D. Ga. Aug. 31, 19981998)(Rule 23 determination and not standing question); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  ("we look to the defendant's conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3)."); *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718 (9th Cir. 2007) ("[I]t is not necessary that all class members suffer the same injury as the class representative.") *De La Fuente v. Stokely –Van Camp, Inc.*, 713 F. 2d 225, 232 (7th Cir. 1977). (A plaintiff's claim is typical "if it arises from the same event or *practice or course of conduct that gives rise to the claims of other class members* and his or her claims are based on the same legal theory."); *Simpson v. Fireman's Fund Ins.* Co., 231 F.R.D. 391, 396 (N.D. Ca. 2005)(relying on the Seventh Circuit's holding in Rosario, the court rejected defendant's standing argument)

Glucosamine and Chondroitin based products to the one that Plaintiff purchased and for which Defendant has made similar false representations.

A similar lack of standing argument was made by the defendant and rejected as premature by this Court in *Scott*, 2006 WL 952032 at \*1. In *Scott*, the defendant, like Defendant here, argued that because the plaintiff had only purchased one of defendant's products (Abreva) she lacked standing to pursue claims regarding the other product (Valtrex). The court in *Scott*, relying upon *Payton*, stated, "Although GSK is raising the issue of Scott's standing to pursue the Valtrex claims now, it has been clearly established that in the context of class action, class certification issues must be dealt with before the trial judge decides standing." *See also Saltzman v. Pella Corp.*, 257 F.RD. 471, 480 (N.D. Ill. 2009) (citing *Payton* for the proposition "that class certification should normally precede Article III standing challenges").[17]

In support of it lack of standing argument Defendant cites to three California district court decisions: *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at \*5 (S.D. Cal. Feb. 9, 2010); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044, 2011 WL 159380, at \*1, \*3 (N.D. Cal. Jan. 10, 2011); and *Mlejnecky v. Olympus Imaging Am. Inc.*, No 2:10-CV-02630, 2011 WL 1497096, at \*4 (E.D. Cal. Apr. 19, 2011) (Def. Mem. 10 n.6). These cases are a minority position amongst California courts, contrary to California law and are also contrary to reasoning set forth in *Payton* and this Court's decision in *Scott*.

The *Johns* case (summarily relied upon without discussion in both *Carrea* and *Mlejnecky*) concluded, without citation to any authority, that a plaintiff that purchased one

---

[17] *But see Padilla v. Costco Wholesale Corp.*, No. 11 C 7686 (N.D. Ill. June 21, 2012)(J. Darrah) (dismissing without prejudice plaintiff's standing to represent purchasers of product he did not buy) (Exhibit D , attached at pp. 5-6) (Plaintiff intends to file an amended pleading in *Padilla* addressing the court's concerns); and *Linares v. Costco Wholesale, Inc.*, No. 11-cv-2547 (S.D. Cal. March 26, 2012)(without any reasoning provided, dismissing with prejudice "Plaintiff's claims relating to Glucosamine with MSM and advertisements she did not personally view…) (Exhibit E ).

product from a defendant did not have standing to sue on behalf of consumers of a similar product for which the defendant made the same false representations. *Johns, supra*, at *5. *Johns*, however, is directly contrary to the California Supreme Court's holding in *In re Tobacco II Cases*, 46 Cal. 4th 298, 319 (2009), where the California Supreme Court held that when the plaintiff's standing to sue the defendant is established, as it is here, the question of whether the plaintiff may represent the class he seeks to represent is one that is left to be determined under Rule 23 (quoting from 7AA Wright et al., Federal Practice and Procedure (3d 3d 2005) ¶1785.1 pp. 388-89)("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, *but not identical*, interests depends not on standing, but on an assessment of typicality and adequacy of representation.") (emphasis added).

Likewise, Defendant's reliance on *Ong v. Sears Roebuck & Co.*, 388 F. Supp. 2d 871, 890 (N.D. Ill. 2004) (Def. Mem. 19), is inapposite. The holding in *Ong* was predicated upon a special statutory standing rule applicable only under Sections 11 and 12 of the federal securities laws, that specifically limits a plaintiff's standing to only those securities offerings which a plaintiff purchased.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

DATED: July 16, 2012

s/ Stewart Weltman
Of Counsel
LEVIN FISHBEIN SEDRAN & BERMAN
STEWART M. WELTMAN
122 S. Michigan Avenue, Suite 1850
Chicago, Illinois 60603

Telephone: 312-427-3600
Fax:     312-427-1850


SIPRUT PC
JOSEPH SIPRUT
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603
312.588.1440

Attorneys for Plaintiff

Of Counsel:

LEVIN, FISHBEIN, SEDRAN & BERMAN
Howard J. Sedran (*To be admitted pro hac vice*)
Charles S. Sweedler (*To be admitted pro hac vice*)
510 Walnut Street
Philadelphia, Pennsylvania 19106
Telephone: 215-592-1500

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
ELAINE A. RYAN
PATRICIA N. SYVERSON (*To be admitted Pro Hac Vice*)
LINDSEY M. GOMEZ-GRAY (*To be admitted Pro Hac Vice*)
2901 N. Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone:    (602) 274-1100
Facsimile:    (602) 798-5860

BONNETT, FAIRBOURN, FRIEDMAN
& BALINT, P.C.
TODD D. CARPENTER (*To be admitted Pro Hac Vice*)
600 West Broadway Suite 900
San Diego, California 92101
Telephone:    (619) 756-6978
Facsimile:    (602) 798-5860

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of July, 2012, a copy of the foregoing Response to Defendant's Memorandum In Support of Its Motion to Dismiss Third Amended Class Action Complaint was filed with the Clerk of Court using the CMM/ECF system which will send notification of such filing to the following:

David B. Sudzus
Bradley J. Andreozzi
Benjamin Todd Vinson
Justin O'Neill Kay
Drinker Biddle & Reath LLP
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606


s/Stewart M. Weltman
One of Plaintiff's Attorneys